STATE OF MONTANA, RESPONDENT, v. JULIUS RECH-
NITZ, APPELLANT.

[Submitted January 10, 1898. Decided February 21, 1898.]

*Larceny—Instructions—Receiving Stolen Goods.*

1. LARCENY—*Instructions.*—An instruction defining larceny is erroneous, if it omits to state the criminal intent which is necessary to constitute the crime; it is not necessary to use the word "feloniously" in describing the crime,—it is enough if the criminal intent, included in that technical word, is included in appropriate terms.
2. SAME—*Receiving Stolen Goods.*—The crime of larceny, as defined in Section 880 of the Penal Code, is distinct from the crime of receiving stolen property, as defined in Section 899, *Id.*, the two crimes are not merged, and one cannot be convicted of larceny as an accessory, when he did not participate in the commission of that crime, although he may have been guilty of receiving stolen goods.

*Appeal from District Court, Lewis and Clarke County. S. H. McIntire, Judge.*

JULIUS RECHNITZ was convicted of larceny, and appeals. Reversed and remanded.

*H. N. Blake* and *J. M. Clements,* for Appellant.

*C. B. Nolan,* Attorney General, for the State.

HUNT, J.—Julius Rechnitz, the defendant, and appellant here, and Lottie Kennedy, were accused of the crime of grand larceny. The information charged that on the 14th day of November, 1896, the said defendants willfully and feloniously took, stole and carried away certain moneys of the value of $125. the property of one Anthony W. Good. The defendants were tried separately, and defendant Rechnitz was convicted of grand larceny, and sentenced to the penitentiary. He filed a motion for a new trial, which was overruled. The appeal to this court is from the final judgment of conviction.

The court gave to the jury the statutory definition of larceny in part as follows: "The Penal Code of Montana (Section 880) defines larceny as follows: 'Every person who, with the intent to deprive or defraud the true owner of his

property, or of the use and benefit thereof, or to appropriate the same to the use of the taker, or of any other person, takes from the possession of the true owner, or, of any other person, or obtains from such possession by color or aid or fraudulent or false representation or pretense, or of any false token or writing, or secretes, withholds or appropriates to his own use, or that of any other person than the true owner, any money, personal property, thing in action, evidence of debt or contract, or article of value of any kind, is guilty of larceny.' ''

It also charged that there must exist a union or joint operation of act and intent, or of act and criminal negligence, and then gave the following instruction:

''In order to find the defendant guilty of the crime of grand larceny as charged in the information, the jury must be satisfied from the evidence beyond a reasonable doubt that Lottie Kennedy took the money described in the information from the possession of the owner thereof, with intent to deprive or defraud such owner of his property, and that the defendant Rechnitz either aided or abetted the said Lottie Kennedy in taking the said money, or in secreting, withholding, or appropriating the same to his own use, or to the use of the said Lottie Kennedy, with intent to deprive the owner of his property; and, unless the jury are so satisfied, they should acquit the defendant.''

The appellant now insists that this latter instruction was an erroneous statement of the law of larceny, inasmuch as the charge omitted the term ''feloniously,'' or any other equivalent words, which would indicate to the jury that in larceny a felonious intent is necessary to authorize a conviction.

There is a fundamental principle of the law of larceny that an act of trespass and a superadded intent to steal are essential to constitute the crime. And, generally speaking, as crime proceeds alone from a criminal mind, there can be no crime without such evil mind. (Bishop's New Criminal Law, Vol. 1, § 288.)

The wisdom of the law upon this subject finds its place in

our Penal Code, which expressly declares that in every crime there must be a joint operation of act and intention, or of act and criminal negligence. "*Actus non facit reum nisi mens sit rea,*" is the maxim, as given by Broom (301), that has found approval in law from ancient to modern times. And while this rule on *mens rea* has been pronounced by so learned a judge as Sir James Fitzjames Stephen in an opinion recently rendered by him in *The Queen* v. *Tolson*, 23 Q. B. Div. 184, as "too short and antithetical to be of much practical value," yet the principle involved is tenaciously upheld, and he thus states it: "The full definition of every crime contains expressly or by implication a proposition as to a state of mind. Therefore, if the mental element of any conduct alleged to be a crime is proved to have been absent in any given case, the crime so defined is not committed; or, again, if a crime is fully defined, nothing amounts to that crime which does not satisfy that definition." Under the common law, to make a taking larceny, it must have been felonious. A wrongful taking of another's property did not necessarily constitute larceny. By larceny was meant an intentional taking, a taking without claim of right, a taking in knowing disregard of the rights of the owner, a taking with the intention of stealing. (2 Russell on Crimes, 146.)

Larceny, a word derived from the Norman French "larcyn," "signifies a felonious, wrongful and fraudulent taking and carrying away by any person, of the personal goods of another, with the felonious intent to convert them to his own use, and make them his own property, without the consent of the owner." (Rapalje on Larceny, § 1.)

These older views of what was a larceny have, to some extent, been modified by accurate statutory definitions, so that now several of the elements that were once essential to complete the crime need not be proven. But the mental element of any larceny must, we think, be still marked by using the word "feloniously," or by equivalent words. There must be accompanying the taking an evil intention. It has been long settled that in an indictment for a common law felony it is

necessary to aver that the act charged to have been done was done "feloniously." (Hawkins' Pleas of the Crown, Book 2, C. 25, § 55.) The word "feloniously" is descriptive of the act charged. It means that the act was done with a mind bent on doing that which is wrong, or, "as it has been sometimes said, with a guilty mind." (Hawkins, J., in *The Queen* v. *Tolson, supra.*) And, after fully considering the statute of this state defining larceny, we have found ourselves unable to construe it without importing into its meaning the qualification ordinarily imported in the construction of criminal statutes, namely, that there must be a guilty mind, as well as a guilty act, to constitute a crime. "A statute," says Bishop on Criminal Law, § 291, "is simply a fresh particle of legal matter dropped into the previously existing ocean of law." The principles which controlled before the adoption of a statutory rule should be applied afterwards as before, that the reason of the enactment may be correctly arrived at, and rational constructions obtain.

Under these rules we have arrived at the conclusion that there must be a mind at fault before there can be the crime of larceny. Any other construction would authorize a conviction of a sheriff who takes under process of a court, and intends to deprive the owner of his property; or the conviction of any one who takes under *bona fide* claim of right, if yet with intent to deprive the owner of his property.

We do not lose sight of the fact that the rule above discussed is not inflexible, and that many acts may become crimes by violation of statutes relating to certain subject-matters, and that a statute may be so worded as to make an act criminal without regard to the question of the intent of the person doing such act. But as to such acts which are not *mala in se*, but *mala prohibita*, a different rule prevails, and it is the duty of a person to take care that he obeys the statute or ordinance, lest he be punished, for the penalty is imposed if the act is done even so innocently. (*Leggatt* v. *Prideaux*, 16 Mont. 207, 40 Pac. 377.)

Let it not be taken that we hold that the common-law rule

prevails, and that the technical word "feloniously" is neces-
sary to be used in describing the taking in larceny, but that,
as it is essential that there must be a taking with an evil in-
tent to constitute larceny, such an intent should be included in
the definition laid down in the charge by proper words con-
veying the meaning of that technical word. (*Gardner* v.
*State*, 55 N. J. Law 17, 26 Atl. 30; *People* v. *Willett*, 102
N. Y. 252, 6 N. E. 301.)

In *McCourt* v. *People*, 64 N. Y. 583, the court said:
"Every taking by one person of the personal property of an-
other, without his consent, is not larceny; and this, although
it was taken without right, or claim of right, and for the pur-
pose of appropriating it to the use of the taker. Superadded
to this there must have been a felonious intent, for without it
there was no crime. It would, in the absence of such an in-
tent, be a bare trespass, which, however aggravated would
not be crime. It is the criminal mind and purpose going with
the act which distinguishes a criminal trespass from a mere
civil injury. (1 Hale on Pleas of the Court, 509.)"

McClain, a very late and learned author on Criminal Law,
says of larceny: "This offense is the most technical in its
distinctions of all the common-law felonies. * * * It has
been found by writers on the subject to be impossible to give
any short description of the offense which shall be accurate,
and at the same time embody the various technical distinctions
which have been recognized in administering the law with
reference to this crime;" and he then proceeds to build upon
the definition of Blackstone that larceny is "the felonious
taking and carrying away of the personal goods of another."
(McClain on Criminal Law, Vol. 1, § 535.)

In our examination of very many decisions bearing upon
the law of larceny, we find that it is almost universally held
that a felonious intention is necessary in the taking. While
any definition of the crime is somewhat unsatisfactory, that
approved by McClain, *supra*, impresses us as sufficiently clear,
so far as it goes in respect to a felonious intent; while that of
Wharton (Section 862, Wharton's Criminal Law) is more com-

plete generally in explaining larceny to be the taking and carrying away of a thing unlawfully and without claim or right, with the intention of converting it to a use other than that of the owner.

It is plain now that the instruction assailed by the appellant in this case was fatally incomplete. The element of felonious intent or *animus furandi*—that vitally important distinction between a larceny and a trespass—was not included in the definition given in any way. The defendant could have taken the property described in the information under a claim of right, with intent to deprive the owner of his property, or could have aided Lottie Kennedy in appropriating the same so taken by her under an honest belief that he or she was the owner, and yet have been declared guilty of grand larceny. The omission was, therefore, an error for which the judgment must be reversed, and a new trial awarded.

The following authorities are in point : *State* v. *Moore*, 101 Mo. 316, 14 S. W. 182; *People* v. *Devine*, 95 Cal. 227, 30 Pac. 378; *McCourt* v. *People*, 64 N. Y. 583; *Mason* v. *State*, 32 Ark. 238; *Miller* v. *People*, 4 Colo. 182; *People* v. *Raschke* (Cal.) 15 Pac. 13; *Witt* v. *State*, 9 Mo. 671; Clark on Criminal Procedure p. 199.

That portion of the statute which declares that every person who, "with intent to deprive the true owner of his property, * * * secretes, withholds or appropriates to his own use or that of any other person than the true owner, any money, personal property * * * or article of value is guilty of larceny" (Penal Code, Section 880), is subject to the same qualifications that we have imported into that portion of the statute referring directly to a taking; that is to say, there can be no secretion, withholding, or appropriation which will warrant a conviction of larceny unless it be accompanied by a felonious intent, or guilty mind.

The appellant has argued that the court should have sustained his motion to instruct the jury to acquit because of insufficiency of the evidence. Without discussing the testimony, we think that the court properly overruled this motion.

But we are satisfied from reading the evidence that the case was one where the defendant was justified in interposing the defense that, if he was guilty of any offense at all, it was not that of larceny, but receiving stolen property, which is a distinct crime, under Section 899 of the Penal Code. And under this theory of the case the court ought to have given the instruction prayed for by defendant's counsel, to the effect that, if the jury found from the evidence that Rechnitz had nothing to do with the taking of the money from the person of the prosecuting witness, and only received it from the hands of the woman who did take it after she had taken it, although defendant may have known that it was or had been stolen from the prosecuting witness, these facts would not justify a conviction of larceny. It is important to not allow the two offenses of larceny and of receiving stolen goods to be merged. ''Receiving of stolen goods is no longer to be considered as an accessory offense.'' (Wharton's Cr. Law, Section 982.) If, therefore, Rechnitz was not guilty of the larceny, whether as principal actor or as aider or abettor, yet was guilty of the statutory crime of receiving the goods when stolen, the jury should have acquitted him under the information for larceny. The defendants had a right to have this distinction properly laid before the jury. The secreting, withholding, or appropriation of property with intent to deprive the owner thereof, as defined under the larceny statute, does not embrace the substantive offense of receiving stolen property knowing the same to have · been stolen. The proof in both crimes may be alike to some extent, but elements enter into the latter that have nothing to do with the former. Recognizing this distinction, the statutes have preserved the identity of the two offenses, and the court ought to have granted defendant's request.

The judgment is reversed, and the cause remanded with direction to award the defendant a new trial.

*Reversed and Remanded.*

Pemberton, C. J., and Pigott, J., concur.