SWORDS, RECEIVER, RESPONDENT, *v.* OCCIDENT ELEVATOR
CO., APPELLANT.

(No. 5,588.)

(Submitted December 9, 1924. Decided December 31, 1924.)

[232 Pac. 189.]

*Conversion—Chattel Mortgages—Prerequisites to Filing—Statutes—Substantial Compliance Sufficient—Pleading—General
Denial—Waiver of Tort and Lien—Offer of Proof—Improper
Rejection—Appeal—Theory of Case.*

Chattel Mortgages—Filing—Statutory Prerequisites—Substantial Compliance Sufficient.
1. Section 8276, Revised Codes of 1921, provides that in order to
entitle a chattel mortgage to be filed it must have attached
thereto a receipt showing that the mortgagor received a copy of
the mortgage. A receipt appeared immediately below the signature of the mortgagor and above the acknowledgment and affidavit
of good faith and recited that a "true, full and complete copy of
the foregoing mortgage" had been received. *Held,* that the statute must be liberally construed, that, so construed, the contention
that the mortgage was not entitled to be filed because the receipt
referred only to what preceded it in point of arrangement and
not to what followed and was therefore incomplete has no merit,
and that the mortgage conformed substantially to the above requirement.

Statutes in Derogation of Common Law—Liberal Construction.
2. The rule of the common law that statutes in derogation
thereof are to be strictly construed has no application to the
Codes or statutes of this state.

Pleading and Practice—Effect of General Denial.
3. The effect of a general denial is to put in issue every material
allegation constituting the plaintiff's cause of action, and casts
upon the plaintiff the burden of establishing, *prima facie* at least,
the presence of every element necessary to a recovery.

Conversion — Complaint — Necessary Allegations — General Denial —
Effect.
4. To state a cause of action in conversion, plaintiff must disclose by his complaint that at the time of the alleged conversion
he had a general or special ownership in the chattel, a right to
its immediate possession, the value of his interest, and that the
acts of the defendant by which he was deprived thereof were
wrongful; a general denial puts in issue all these allegations and
any evidence which tends to negative any of them is admissible
under it.

Same — Chattel Mortgaged Property — Waiver of Tort and Nature of
Defenses—Pleading.
5. After conversion of mortgaged chattels the mortgagee᾽ may
waive the tort, and he may waive his lien upon them at any time;

the defense that the tort has been waived is in the nature of a confession and avoidance which must be specially pleaded; while the defense of waiver of the lien denies that the mortgagee had any interest in the chattels at the time they were taken, and may be proved under a general denial.

Waiver—Definition.

6. A waiver is the intentional relinquishment of a known right and implies that the right was in existence at the time it is claimed to have been waived.

Chattel Mortgages—Waiver of Lien—What Constitutes.

7. A mortgagee waives his lien when he consents that the mortgaged property may be sold to a third person without reservation.

Appeal—Appellant may not Change Theory of Case.

8. On appeal counsel will not be heard to change the theory upon which the action was tried.

Conversion—Chattel Mortgaged Property—Waiver of Mortgage Lien—Offer of Proof—Improper Rejection.

9. In an action in conversion against the purchaser of a mortgaged crop of grain, an offer of proof by defendant of a waiver of the mortgage lien by plaintiff mortgagee, *held* not objectionable as tending to establish a conditional waiver merely, the offer not having been susceptible to the construction that the mortgagee agreed to purchase only on condition that his name should appear as a payee on the check issued in payment of the grain.

*Appeal from District Court, Stillwater County; H. J. Miller, Judge.*

ACTION by George W. Swords, as receiver of the Citizens' National Bank of Laurel, against the Occident Elevator Company. Judgment for plaintiff and defendant appeals. Reversed and remanded.

*Mr. Sterling M. Wood* and *Mr. Robert E. Cooke,* for Appellant, submitted a brief; *Mr. Wood* argued the cause orally.

*Messrs. Nichols & Myers,* for Respondent, submitted a brief.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

Stated briefly, the facts out of which this controversy arose are that the Citizens' National Bank of Laurel held a chattel

---

7. Sale of mortgaged chattels by or with the consent of mortgagor, and application of proceeds to payment of mortgage as a foreclosure cutting off intervening liens, see note in 45 **L. R. A. (n. s.)** 1137.

mortgage upon a crop of grain belonging to G. A. Starkweather to secure an indebtedness of something over $17,000. The mortgage had been filed in the office of the county clerk and recorder, and, while it was still in full force and effect, the Occident Elevator Company purchased a portion of the mortgaged property, and paid the purchase price to Starkweather directly.

This action in conversion was instituted by the bank, through the receiver in charge of its business, to recover from the elevator company the value of the grain so purchased, and in the complaint the transactions are set forth at length. The answer is a general denial.

Upon the trial, and after the plaintiff had rested, the defendant sought to show that it purchased the grain in controversy from Starkweather and paid the purchase price to him directly under an agreement with the plaintiff bank that it might be done. The offered evidence was rejected, and the defendant having rested, a verdict was returned in favor of the plaintiff by direction of the court, and from the judgment entered thereon defendant appealed.

1. It is contended that the mortgage was not entitled to be [1] filed, and therefore did not impart constructive notice.

Section 8276, Revised Codes, provides that every chattel mortgage, in order to be entitled to be filed, must be signed and acknowledged by the mortgagor and bear the affidavit of good faith by the mortgagee. The section then proceeds:

"And every mortgagee must surrender without cost to the mortgagor, at the time of the execution of the mortgage, a correct copy of the original mortgage so signed, with acknowledgments shown thereon. And the mortgagor must surrender to the mortgagee a receipt, which shall be attached to the original mortgage, showing that the mortgagee has surrendered to him a copy of such mortgage, and said receipt must accompany the mortgage when presented to the clerk and recorder and filed therewith. Otherwise said mortgage shall not be filed as a chattel mortgage by the clerk and recorder."

In the mortgage in question there appears immediately below the mortgagor's signature and above the acknowledgment and affidavit the following:

"Mortgagor's receipt for copy. I hereby acknowledge that at the time of the making, execution and delivery of this mortgage, the mortgagee delivered to me a full, true and complete copy of the foregoing mortgage, without additional cost to me, and that I received said copy of mortgage.

"G. A. STARKWEATHER."

It is argued that this receipt does not purport to refer to the mortgage "with the acknowledgments shown thereon," but can be construed only as a receipt of a copy of so much of the entire instrument only as precedes it in point of arrangement. At first blush there would appear to be some merit to the contention, but when it is recalled that section 8276 does not require that the receipt shall be written upon the mortgage, but only requires that it must "be attached to the original mortgage" and "must accompany the mortgage when presented to the clerk and recorder and filed therewith," the defect recedes to the vanishing point. The mortgagor acknowledged the receipt of "a full, true and complete copy of the foregoing mortgage," and it would require an extremely strained construction of the language to say that it means a copy of only that portion of the instrument which precedes it in place. The same contention made here was made and overruled in *Colman* v. *Shattuck*, 2 Hun (N. Y.), 497, and in *Commercial State Bank* v. *Interstate El. Co.*, 14 S. D. 276, 86 Am. St. Rep. 760, 85 N. W. 219, and no authorities to the contrary are cited.

It is insisted by defendant that our chattel mortgage statute [2] must be construed strictly, and some of the early decisions of this court announce that rule, but it has never prevailed in this state since the adoption of the Codes, although the statute was apparently overlooked in *Reynolds* v. *Fitzpatrick*, 23 Mont. 52, 57 Pac. 452. Since July 1, 1895, it has

been the law of this state that "The rule of the common law that statutes in derogation thereof are to be strictly construed has no application to the Codes or other statutes of the state of Montana. The Codes establish the law of this state respecting the subjects to which they relate, and their provisions and all proceedings under them are to be liberally construed with a view to effect their objects and to promote justice." (Sec. 4, Pol. Code 1895; sec. 4, Rev. Codes 1907; sec. 4, Rev. Codes, 1921.) No exception is made in the chattel mortgage statute; hence we are bound by the rule of construction quoted above. The mortgage conforms substantially to the requirements of section 8276.

In passing, we observe that, if the matter stated in the first offer of proof be true, defendant must have had actual knowledge of the bank's mortgage, otherwise there would appear to be no reason for defendant consulting the bank and securing its consent before purchasing the grain.

2. When defendant sought to show that the grain had been purchased from Starkweather and the purchase price paid to him, by consent of the bank, counsel for plaintiff objected upon the ground that the manifest purpose was to prove a waiver which had not been pleaded. Upon the admission of counsel for defendant that such was the purpose, the objection was sustained and the offered evidence excluded. It is urged that the court erred in the ruling, and that the evidence was admissible under the general denial in the answer.

A general denial is authorized by statute (sec. 9137, Rev. Codes), and the effect of it is to put in issue every material [3, 4] allegation constituting the statement of plaintiff's cause of action, and casts upon the plaintiff the burden of establishing, *prima facie* at least, the presence of every element necessary to a recovery. (*Hickey* v. *Breen,* 40 Mont. 368, 20 Ann. Cas. 429, 106 Pac. 881; *Chealey* v. *Purdy,* 54 Mont. 489, 171 Pac. 926.)

"A conversion is any unauthorized act which deprives a man of his property permanently or for an indefinite time. * * * Any distinct act of dominion wrongfully exerted over one's property in denial of his right, or inconsistent with it, is a conversion." (*Glass* v. *Basin & Bay State Min. Co.,* 31 Mont. 21, 77 Pac. 302.) From these definitions it follows that, to state a cause of action in conversion, plaintiff must disclose by his complaint that at the time of the alleged conversion he had a general or special ownership in the chattels, a right to the immediate possession thereof, the value of his interest, and that the acts of the defendant which deprived him thereof were wrongful. (*Interstate National Bank* v. *McCormick,* 67 Mont. 80, 214 Pac. 955.)

The general denial puts in issue all of these allegations, and any evidence which tends to negative any of them is admissible. (*Chealey* v. *Purdy,* above.) If in this action the bank con- [5] sented to the sale of the grain by Starkweather to defendant and to the payment of the purchase price therefor to Starkweather directly, then the appropriation of the property by the defendant was not wrongful (*United States Nat. Bank* v. *Great Western Sugar Co.,* 60 Mont. 342, 199 Pac. 245), and plaintiff cannot complain under the familiar maxim "*volenti non fit injuria,*"—"he who consents to an act is not wronged by it." (Sec. 8744, Rev. Codes.)

After a conversion of mortgaged chattels has actually taken place, the mortgagee may waive the tort (26 R. C. L. 1144), or he may waive his lien upon the property at any time. (11 C. J. 674.)

The distinction between a waiver of the conversion and a waiver of the lien is important as it relates to the question of pleading. The defense that the tort has been waived admits that defendant converted the property and that plaintiff had a cause of action therefor, but seeks to show that plaintiff chose to treat the act as not wrongful and thereby to relinquish his right of action. Such a defense is in the nature of a confession and avoidance, which must be pleaded specially. It is such

a defense as is required to be pleaded by subdivision 2 of section 9137, Revised Codes. (31 Cyc. 218; Bowers on Conversion, sec. 543.)

In 38 Cyc. 2075, the general rule is stated as follows: ''All defenses in bar are admissible under the general issue, except matters of confession and avoidance.''

The defense that the mortgagee bank waived its lien before the property was taken by the defendant is a denial that the mortgagee had any interest in the property at the time it was taken. In this action, in order to prevail it was incumbent upon plaintiff to show some interest in the grain at the time of the alleged conversion (*Potter* v. *Lohse,* 31 Mont. 91, 77 Pac. 419; *Raymond* v. *Blancgrass,* 36 Mont. 449, 15 L. R. A. (n. s.) 976, 93 Pac. 648), and, since the bank claimed only a lien, by virtue of its mortgage, if it had waived that lien, it did not have any interest whatever. The general denial put in issue the plaintiff's claim of an existing interest, and under it defendant was entitled to show, if it could, that plaintiff did not have any interest in the grain at the time it was purchased. (*Pico* v. *Kalisher,* 55 Cal. 153; *Hopkins* v. *Dipert,* 11 Okl. 630, 69 Pac. 883; *Southern Car, M. & S. Co.* v. *Wagner,* 14 N. M. 195, 89 Pac. 259; *Haynes* v. *Kettenbach Co.,* 11 Idaho, 73, 81 Pac. 114; 38 Cyc. 2075; Bowers on Conversion, sec. 532.)

A waiver is the intentional relinquishment of a known right **[6, 7]** (*Murray* v. *Heinze,* 17 Mont. 353, 42 Pac. 1057; 27 R. C. L. 904; 8 Words and Phrases, First Series, 7375), and implies necessarily that the right was in existence at the time it is claimed to have been waived (*State ex rel. Driffill* v. *City of Anaconda,* 41 Mont. 577, 111 Pac. 345; *San Bernardino Inv. Co.* v. *Merrill,* 108 Cal. 490, 41 Pac. 487).

When counsel for defendant conceded that the purpose of offering the evidence in question was to establish a waiver, he could not have referred to a waiver of the tort, for at the time to which the offered evidence relates no tort had been committed. His reference must have been to a waiver of the lien, and the offer clearly indicates that this was the purpose. The

authorities are practically unanimous in holding that a mortgagee does waive his lien when he consents that the mortgaged property may be sold to a third person without reservation. (*Fincher* v. *Bennett,* 94 Ark. 165, 126 S. W. 392; *Brandt* v. *Daniels,* 45 Ill. 453; *Reese* v. *Kapp,* 82 Kan. 304, 108 Pac. 96; *Littlejohn* v. *Pearson,* 23 Neb. 192, 36 N. W. 477.)

In Bowers on Conversion, section 534, the general rule is stated as follows: "A general denial puts in issue the conversion of the goods, so that thereunder the defendant may prove any fact showing or tending to show that there was no conversion; thus it may be proven under a general denial that the taking of the goods by the defendant was by permission of the plaintiff and according to an agreement between the parties." To the same effect is the text in 26 R. C. L. 1145.

The offered evidence was admissible under the general denial and the court erred in excluding it.

Counsel for plaintiff now suggest that the purpose of the [8] offered evidence was to establish an estoppel *in pais,* but that was not the theory advanced in the lower court, and on appeal counsel will not be heard to change the theory upon which the action was tried. (*Raiche* v. *Morrison,* 47 Mont. 127, 130 Pac. 1074.) Furthermore, the theory now advanced has no foundation in fact, for the offered evidence did not even tend to establish an estoppel (*Wells* v. *Waddell,* 59 Mont. 436, 196 Pac. 1000; *Estate of Nix,* 66 Mont. 559, 213 Pac. 1089), and there is not anything in the record to indicate that defendant relied upon that defense. On the contrary, the record discloses affirmatively that such was not the case.

It is argued further that the offered evidence did not go [9] further than to establish a conditional waiver, and this upon the theory that the bank agreed to the purchase only on condition that its name should appear as a payee on the checks. But we are unable to so construe the language. The offer in its entirety reads as follows: "The defendant Occident Elevator Company now offers to prove by the witness J. S. Nicholson, upon the stand, as follows, to wit: First, that prior to the dates

of the alleged acts of conversion pleaded in the complaint in this action, the said J. S. Nicholson, who was then and there the agent and representative of the Occident Elevator Company at Molt, Montana, had a conversation with one Lester B. Koons, who was then and there the cashier and an officer of the Citizens' National Bank of Laurel, in which the said Lester B. Koons, said to the said J. S. Nicholson that the Citizens' National Bank of Laurel wanted Mr. Nicholson to put the name of the bank on any checks that were given to G. A. Starkweather in payment of grain of Starkweather delivered at the elevator; that Nicholson replied that he would do so, and further said to Mr. Koons, 'What shall we do about the threshing and other expense in connection with this grain? Starkweather had been in to see me and wants some of the money for that purpose.' To which Mr. Koons replied: 'It will be perfectly satisfactory to the bank,' or words to that effect, 'for you to pay to Mr. Starkweather enough to take care of this expense.' ''

While the language of the offer is not as explicit as it might be, the meaning appears to be reasonably plain. If in the first portion of this conversation the parties had in contemplation that the elevator company would purchase the entire crop subject to the mortgage, the reason for the bank's request is perfectly apparent, for, if the checks given for the purchase price were made payable to Starkweather and the bank jointly, then the bank could see that the money was applied to the discharge of the indebtedness due it, for the negotiation of the checks would require the indorsement of both payees. (Sec. 8448, Rev. Codes.) If, however, the parties contemplated that the elevator company would purchase only so much of the grain as was necessary to defray the expenses, then the agreement that the bank's name should be written in as a payee is meaningless and purposeless, since the money for that portion of the grain was to go to Starkweather directly and to be used for a purpose other than the payment of the debt due the bank.

We think the only fair construction of the language is that in the first instance the parties contemplated that the entire crop would be purchased by the elevator company, and the agreement that the bank's name should appear as a payee was predicated upon that assumption. When, however, it was later suggested in the same conversation that the threshing and allied expenses required immediate attention the special agreement was made that, for the portion of the crop necessary to meet those expenses, the purchase price should be paid to Starkweather directly, which would have authorized payment to be made in cash or by checks payable to Starkweather only.

What has been said with reference to the first offer of proof is applicable equally to the third and fourth offers.

The evidence sought to be introduced by the second offer appears to be altogether immaterial, and the ruling upon it was clearly correct.

3. While it appeared that Starkweather did not hold the legal title to all of the land upon which the mortgaged grain was grown, we think the evidence is sufficient to show that he had such interest in the grain itself that he could give a valid mortgage upon it.

The judgment is reversed and the cause is remanded for a new trial.

*Reversed and remanded.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES RANKIN and STARK concur.

MR. JUSTICE GALEN, being absent on account of illness, did not hear the argument and takes no part in the foregoing decision.