DAVIS, Respondent, *v.* SULLIVAN GOLD MINING CO., Appellant.

(No. 7,600.)

(Submitted November 20, 1936. Decided December 10, 1936.)

[62 Pac. (2d) 1292.]

*Messrs. Toomey, McFarland & Chapman,* for Appellant, submitted a brief; *Mr. John W. Chapman* argued the cause orally.

*Mr. T. H. MacDonald,* for Respondent, submitted a brief and argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

The plaintiff, Sam Davis, brought action in *quantum meruit* for wages alleged to be due him from the defendant, Sullivan

Gold Mining Company, and, on demand, furnished a bill of particulars in which he claimed to have worked from March 20, 1932, to March 20, 1933, during which time his services were of the reasonable value of $90 per month; 5 days in December, 1933, 28 days in January, 1934, and 5 days in December, 1934, for which 38 days his services were of the reasonable value of $3 per day. He asked judgment for the total amount claimed, with interest from the time the several sums were due, and $250 as a reasonable attorney fee, but admitted payment of $200 on account.

The defendant answered by general denial and, by way of a special defense, alleged that in the spring of 1934 the plaintiff presented to M. L. Savage, secretary of the defendant company, claims against the defendant, against Savage personally and against the Bell Boy Mining Company, and that plaintiff and Savage, acting for himself and for the mining companies, agreed to settle all of the claims, and the plaintiff agreed to accept 10,000 shares in the Bell Boy Mining Company in full satisfaction of his claims. It is then alleged that the stock was owned by Savage personally and was then tied up in a stock pool in Washington and could not be delivered, which fact was known to the plaintiff, who thereupon agreed to accept Savage's promise to deliver the stock to him at the expiration of the pool.

It is further alleged that the plaintiff and Savage, and the defendant acting through Savage, reaffirmed this settlement on December 8, 1934, and that Savage has at all times been, and at the time of the answer was, ready, willing and able to perform. The plaintiff filed a reply denying generally all new matter set up in the answer.

The cause was tried to the court and a jury and resulted in a verdict and judgment in favor of the plaintiff for the full amount claimed, except as to the attorney fee, the court fixing a lesser amount. Defendant moved for a new trial, which motion was denied. The defendant has appealed from the judgment, specifying error on the court's action in giving, re-

fusing to give, and in modifying certain instructions, and in overruling the motion for a new trial.

The plaintiff, having admitted that on June 20, 1932, he, with other employees of the companies mentioned therein which, apparently, were under the same management, signed the following agreement: "We, the undersigned employees of the Sullivan and Bell Boy Gold Mining Co., do hereby agree to accept the equivalent of our wages in stock in the Bell Boy Gold Mining Co., at the fixed price of said stock, providing you pay our board and necessary living expenses," and admitted that he was furnished board and room, but declared that no stock was ever delivered to him. Counsel for the opposing parties disagree as to the effect of the showing made and as to instructions which should be given.

Counsel for the plaintiff offered, and the court gave over objection of defendant's counsel, the following instruction: "You are instructed that if you find that the plaintiff entered into an agreement with the defendant to accept certain stock in lieu of payment of any part of any amount claimed by plaintiff in this action, yet if such stock was not actually delivered to the plaintiff, then such agreement will have no effect in so far as this action is concerned."

Counsel for the defendant offered an instruction, which the court refused, to the effect that, if such "contract agreement" was signed, the verdict must be for the defendant "whether or not such stock has been delivered to him."

It being admitted by the defendant that the stock was not delivered, counsel contend that the court erroneously "kept completely from the consideration of the jury the effect of the contract upon the present action." It is first contended that the agreement quoted constituted a rescission of the original contract to pay wages and the substitution of a new contract which relieved the defendant of any obligation to pay wages in cash, and that the plaintiff's only remedy was to sue for the specific performance of the new contract, or for damages for its breach.

There are several reasons why this contention cannot be sustained. The agreement is signed only by the employees of the two corporations, the Sullivan and the Bell Boy companies, neither of which signed it. With respect to the claim of this plaintiff, if the agreement is not purely unilateral and a reciprocal promise may be presumed in order to vest the agreement with the necessary attribute of mutuality (13 C. J. 334, and cases cited), we must presume that the Sullivan Company agrees to pay its employees in stock of the Bell Boy Company, and that the Bell Boy Company agrees to deliver its stock in payment of claims against the Sullivan Company. While Savage was secretary of the Sullivan Company and it is contended that he had authority to compromise the claims against his company, it does not necessarily follow that he had authority to bind his company to an agreement to deliver stock of another company in which it does not appear that it held stock.

Further, Savage explained the purpose of securing the agreement, which was that ''I made a little contract with them so that in case I didn't have the money I could make a settlement in stock.'' This would not be an abrogation of the contract of employment, but rather a modification thereof granting to the employer the option of paying either in specie or stock. Again, payment of the amount due for services rendered was due either monthly or within a reasonable time after such rendition, and failure to make such payment constituted a breach of the contract.

In the circumstances thus far considered, the agreement was unilateral in the sense that it was binding on the one party but not on the other (*Commissioner of Internal Revenue* v. *Hind*, (C. C. A.) 52 Fed. (2d) 1075; *Perfection Mattress & Spring Co.* v. *Dupree*, 216 Ala. 303, 113 So. 74), but, treating it as a contract to permit the defendant to pay in stock if it so desired, which contract has been breached, the plaintiff was not necessarily restricted to the remedy of specific performance or to an action for damages for the breach;

he could treat the contract at an end and sue upon *quantum meruit*. (*Keyser* v. *Rehberg*, 16 Mont. 331, 41 Pac. 74; *McFarland* v. *Welch*, 48 Mont. 196, 136 Pac. 394; *Clifton, Applegate & Toole* v. *Big Lake Drain District*, 82 Mont. 312, 267 Pac. 207.)

A further fact appearing in the record and rendering the position of counsel for the defendant untenable is that on September 22, 1932, all of the employees of the Sullivan Company, including the plaintiff, were discharged. Savage testified that he settled with the other men in cash, which action is a further interpretation of the alleged contract by the parties, indicating that it gave to the company the option mentioned, without abrogating the original contract. Davis was thereupon rehired, ·without any intimation in the record that the agreement was renewed, or that, at the time of his discharge, he was paid either in cash or stock.

It is, however, further contended that in March, 1933, the plaintiff and Savage met for the purpose of settlement, and that at that time the plaintiff agreed to accept 10,000 shares of the Bell Boy stock in full settlement of all claims against the defendant Savage and the Bell Boy Company, he having worked, at times, for all three, but that the stock was then in a "pool" and·could not be then delivered, which facts were made known to the plaintiff, who agreed to wait for the stock until such time as it was released. This agreement, it is asserted, constituted an accord and satisfaction, or a novation, under which plaintiff agreed to accept the promise of Savage in satisfaction of his claims, and therefore, as alleged in the answer, this action does not lie. On this theory the defendant offered an instruction to the effect that, if such offer was made by Savage and accepted by the plaintiff, "the verdict must be for the defendant whether or not any such stock has been delivered to said Davis." In this instruction the court inserted the words "and said stock· was delivered or offered to be delivered to the plaintiff," just preceding the quoted portion of the offered instruction as modified. Error is assigned.

If the evidence on behalf of the defendant with respect to the agreement of 1933 sustained the allegations of the alleged affirmative defense, this instruction should, perhaps, have been given without modification, even though the evidence was contradicted by the plaintiff, under the exception to the rule declared by the statute that an accord "does not extinguish the obligation until it is fully executed" (sec. 7457, Rev. Codes), to-wit, that, if it is intended that a promise for the future constitutes the accord and is so accepted in lieu of the original obligation, it is a good consideration and constitutes satisfaction. (*Barbarich* v. *Chicago etc. Ry. Co.*, 92 Mont. 1, 9 Pac. (2d) 797.) The evidence, however, falls far short of establishing such defense. Savage, the only witness for the defendant, testified on direct examination that "at that time he [Davis] was not making any claims against the Sullivan Gold Mining Company, against me or against the Bell Boy. As to my purpose in offering this, I was traveling around locating claims; * * * I located a lot of claims to purchase an option or whatever it is. Sam was with me helping along and when I organized a company I thought he should share in whatever was to be done and I would pay up in full for those services. I thought I should give him 10,000 shares and I offered it to him and he agreed to take it * * * in place of all claims he had against me; * * * this involved just me because the Sullivan and Bell Boy neither one had anything to do with that. It was just Sam Davis and myself on personal stuff and he agreed it was to wipe out all claims absolutely, and settle everything." If, as the witness positively declared, Davis was then making no claim against this defendant and it was a settlement only on "personal stuff" between him and Savage at that time, it is clear that the agreement was not made by the latter as a representative of the defendant authorized to compromise claims against it, the claims sued upon, which were not then mentioned. It is true that, on redirect, the witness attempted to show that the settlement did include the claims in suit, but this was merely a declaration

of his conclusion drawn from the facts he had already given, and cannot destroy the effect of the positive testimony respecting the agreement.

On December 8, 1934, after repeated demands for settlement of his claims, Savage gave Davis a "receipt," declaring, "I am keeping your ten thousand shares \* \* \* of Bell Boy stock, which is in a pool \* \* \* with the rest of the Company's stock \* \* \* to be delivered to you at the expiration of said pool." This receipt is in accord with Savage's testimony as to his agreement with Davis on personal liability, but does not establish the claim of accord and satisfaction of plaintiff's claims against this defendant. The so-called "pool" consisted of placing all of the stock in the Bell Boy Company in escrow on option to purchase, which, if taken up, would have rendered performance of the agreement of Savage impossible. The stock was released long prior to the commencement of this action, but there was neither delivery nor offer to deliver to Davis. There was, therefore, no sufficient showing of an agreement on plaintiff's part to accept the mere promise of an authorized agent of the defendant to deliver stock in the future in satisfaction of his claim against the defendant; indeed, the testimony refutes the contention, and, consequently, the offered instruction was not justified by the evidence. It is never error to refuse an instruction not warranted by the evidence. (*Fitzgerald* v. *Clark*, 17 Mont. 100, 42 Pac. 273, 52 Am. St. Rep. 665, 30 L. R. A. 803; *Riley* v. *Northern Pacific Ry. Co.*, 36 Mont. 545, 93 Pac. 948.)

No error was committed in the settlement and giving of the instructions.

The only additional question urged in support of the assignment that the court erred in denying defendant's motion for a new trial is that the verdict is excessive, in that the defendant was not given credit therein for the sum of $50 in addition to the $200 admitted in the complaint to have been paid plaintiff on account. This because defendant was permitted to introduce in evidence a number of checks drawn on

the defendant's account and made payable to the plaintiff. Of these checks three covered the amount admitted by plaintiff; one for $25, shown to have been given plaintiff for expense money on a trip for the company; one for $50, for which no one seemed to be able to give an explanation. Other checks were mentioned by the plaintiff in accounting for the checks introduced as having been given him for use in connection with the business of either the Sullivan or Bell Boy Company, but not for credit on his account. The check in question was admitted over the objection that it was not responsive to any issue in the case, and, in rebuttal of the contention here made, the plaintiff makes the cross-assignment that the court erred in admitting the check. The objection was well taken; the defendant interposed but two defenses, first, the general denial which but paved the way for the second and real defense of settlement by accord and satisfaction, or novation. If, under either of these defenses, the check was admissible at all, it was the duty of the defendant to lay a foundation for its admission by showing that it was delivered to the plaintiff as a payment on his account against the Sullivan Company. Such a showing would be at variance with the allegations of the special defense pleaded, and, in view of the explanation that like checks were given plaintiff for purposes other than payment on account, it cannot be presumed that this check, introduced without explanation, was given for this latter purpose. However, had the proper foundation been laid, the check was not admissible.

While the effect of a general denial is to put in issue every material allegation of the complaint and cast upon the plaintiff the burden of establishing, prima facie at least, the presence of every element necessary to a recovery (*Swords* v. *Occident Elevator Co.*, 72 Mont. 189, 232 Pac. 189), if the defendant desires to go further as a matter of defense, he must do so by special plea, the office of which is to set up facts which would otherwise not be apparent to the court (49 C. J. 180). In other words, if the defendant desires to do more

than controvert the allegations of the complaint by general or special denials, he must in his answer set out ''a statement of any new matter constituting a defense.'' (Sec. 9137, Rev. Codes.) Under our system of pleading, payment is ''new matter constituting a defense'' and, to be available as a defense, must be pleaded; it cannot be proven, under a general denial, either in bar or mitigation of recovery. (21 R. C. L. 115; *Power* v. *Gum,* 6 Mont. 5, 9 Pac. 575; *Stewart* v. *Budd,* 7 Mont. 573, 19 Pac. 221.)

As the check. in question should not have been admitted in evidence in the state of the pleadings, the failure of the jury to take it into consideration, if the jury did so fail, does not render the verdict excessive to that extent.

Judgment affirmed.

MR. CHIEF JUSTICE SANDS and ASSOCIATE JUSTICES ANDERSON, STEWART and MORRIS concur.