STATE, Respondent, v. SOUHRADA, Appellant.

No. 8858

Submitted January 10, 1949. Decided April 12, 1949.

204 Pac. (2d) 792

378

Mr. H. C. Crippen, Mr. Rockwood Brown, Mr. Horace S. David, Mr. Marion B. Porter, Mr. Norman Hanson and Mr. William H. Bellingham, all of Billings, for appellant. Mr. Crippen and Mr. Davis argued orally.

Mr. R. V. Bottomly, Atty. Gen., Mr. Bert W. Kronmiller, County Atty., of Hardin, Mr. Clarence Hanley, Asst. Atty. Gen. and Mr. Don Sullivan, Sp. Asst. Atty. Gen., for respondent. Mr. Kronmiller argued the cause orally.

THE HONORABLE WILLIAM R. TAYLOR, District Judge (sitting in place of Associate Justice Bottomly, disqualified), delivered the opinion of the court.

On August 30, 1947, at about the hour of one o'clock a. m., on U. S. Highway No. 87, and about one and one-half miles west of Hardin, Big Horn county, Montana, Robert J. Souhrada drove an automobile into the rear end of an automobile owned and driven by Herbert Dyckman, in such a manner as to cause the Dyckman car to burst into flames and burn to death three of the occupants of the car; namely, Sam Redding, Jr., Shirley Redding, and Marie Baker; following such collision, the Dyckman car traveled a distance of approximately one hundred fifty feet, where it crashed into a Montana highway patrol car which had been approaching from the opposite direction and which had come to a stop at the east end of a bridge, and caused the death of Leo Shonrock, a city policeman of Hardin, Montana, who had been riding in the Montana highway patrol car, by crushing him between the patrol car and the railing, or a guard post of the bridge. Defendant was charged with the crime of manslaughter, as a result of the deaths of the three persons who were burned to death in the Dyckman car; a jury found him guilty and left his punishment to be fixed by the court; he was sentenced to serve eighteen months in the Montana state prison, at hard labor; and, from this judgment, defendant has appealed. Additional facts of the occurrence will be developed in deter-

380

mining the alleged error in the trial relied upon by the defendant in this appeal.

The information was set forth in form, as approved by this court in the case of State v. Gondeiro, 82 Mont. 530, 268 Pac. 507. A bill of particulars was furnished defendant, in compliance with his demand, and, because of the stress by defendant throughout the case upon the bill of particulars, the material parts thereof are set out as follows:

"(A) That defendant drove and operated an automobile at the time set forth in the Information, upon and over a highway and public thoroughfare of the State of Montana, in Big Horn County, Montana, while he was then and there under the influence of intoxicating liquor, which fact was an efficient and producing cause of the accident which resulted in the death of Sam Redding, Jr., Shirley Redding and Marie Baker.

"(B) That defendant negligently, wrongfully and unlawfully, at the time referred to in the information, drove an automobile over a highway and public thoroughfare in the State of Montana, in Big Horn County, with a disregard for human life and with an indifference to the consequences of the reckless manner in which said automobile was being driven, and under circumstances incompatible with a proper regard for human life, and with a disregard for his own safety and the safety of others riding with him in said automobile, which acts contributed to and were proximate causes of the death of the said Sam Redding, Jr., Shirley Redding and Marie Baker.

"(C) That defendant wrongfully and unlawfully, at the time mentioned in the Information, drove a motor vehicle on a public highway in Big Horn County, Montana, in a grossly reckless, culpable and negligent manner in that he drove said automobile, without maintaining control thereof, and at a rate of speed so great he could not control said automobile, and likewise, greater than was reasonable and prudent and proper, having regard for the conditions then and there existing on said highway, and that the said accident which resulted in the death of Sam Redding, Jr., Shirley Redding and Marie Baker, was caused by such

actions on his part, and that his actions as aforesaid, were the proximate result thereof.

"(D) That defendant, willfully, wrongfully and unlawfully, drove and operated an automobile on a public highway of the State of Montana at a speed greater than fifty-five miles per hour during the hours when lights on the vehicles are required, which acts contributed to and were proximate causes of the death of the said Sam Redding, Jr., Shirley Redding and Marie Baker.''

About one o'clock a. m., on August 30, 1947, highway patrol-man Robert J. Bragg, accompanied by Leo Shonrock, a city policeman of Hardin, Montana, was driving easterly on U. S. Highway 87, and, at a point about two miles west of Hardin, first observed the Dyckman car approaching him. It was being driven on its right-hand side of the highway, at a speed of about forty-five miles an hour. As the cars approached each other, the Dyckman car's lights were dimmed, as were the patrol car's lights, and the speed of the Dyckman car was reduced to about thirty-five miles per hour. Patrolman Bragg testified that he also observed the car driven by defendant Souhrada, coming from Hardin, westerly, and in the same direction in which the Dyckman car was traveling, and at a speed estimated by Patrol-man Bragg as twice as fast as the speed of the Dyckman car, and at a speed of seventy to seventy-five miles per hour. Patrolman Bragg, after driving toward said cars a short distance, stopped his car at the end of a bridge on said highway, got out of his car, and was in front of it, when the car driven by defendant Souh-rada crashed into the Dyckman car, caused it to immediately burst into flames and to be propelled, without guidance, to the point where it crashed into the patrol car, and caused it to crush Leo Shonrock between it and the bridge rail, or post. Prior to the Dyckman car's crashing into the patrol car, Patrolman Bragg ran off the side of the highway and, then back to the burning Dyckman car, where he removed from the burning car the two occupants of the Dyckman car who survived the tragedy. Objection was made to the testimony given by Patrolman Bragg

as to his estimate and opinion of the speed at which the Dyckman car and the car driven by defendant Souhrada were traveling. There is no merit here to such objection, for any person of ordinary ability and intelligence, having the means or opportunity of observation, is competent to testify to the rate of speed of a moving object. 20 Am. Jur., "Evidence," sec. 805, p. 678; 23 C. J. S., Criminal Law, sec. 875, page 90; Lewis v. Miller, 119 Neb. 765, 230 N. W. 769, 70 A. L. R. 532, 540-550; Enghlin v. Pittsburg County R. Co., 169 Okl. 106, 36 Pac. (2d) 32, 94 A. L. R. 1180. 1190-1194; Hastings v. Serleto, 61 Cal. App. (2d) 672, 143 Pac. (2d) 956.

The testimony of Patrolman Bragg, a witness who, by training █ and experience, could be considered an expert in ordinary traffic problems, was based upon personal knowledge, and, while such observation was made at nighttime, the means or opportunity for him to observe was ideal, for he was on a knoll, or elevation of the highway, and saw the lights of the two cars as they were driven toward him. The weight of his testimony was for the jury.

The witness, William Gurdzinski, a city patrolman, employed █ by the city of Hardin, testified that he was driving the city patrol car on one of the main streets of Hardin when he saw the car driven by defendant Souhrada, driven from an intersecting street or road, designated here as Crawford Avenue, or the Custer-Hardin road, onto a portion of U. S. Highway 87, running through Hardin, without stopping as required, and at a rapid rate of speed; that he pursued the car, but the car drew away from him, despite the fact that he attained a speed of fifty-five miles per hour; that, while in such pursuit he heard the crash and saw the flames arising from the car; and that he then drove into a farm yard and telephoned the Hardin fire department; and then drove on to the scene of the collision. On direct examination, Gurdzinski had stated the car which he followed was the car driven by defendant Souhrada; on cross-examination he stated he had never seen the car before and that it was his inference that the car he saw and followed was the one driven

by the defendant. He further testified that the car in question was the only one he saw at the time and until the collision. A motion was made to strike Gurdzinski's testimony at the time this statement was made on cross-examination, again at the conclusion of the state's case, and again at the conclusion of the introduction of evidence. On the theory that Gurdzinski's testimony as to the identity and speed of defendant's car was not properly before the court, and that the testimony of Patrolman Bragg as to the speed of the cars involved was improper, and therefore, no evidence being before the court as to the speed or manner in which defendant drove the automobile, defendant moved, at the conclusion of the state's case and at the conclusion of the presentation of evidence, and requested instructions that the issues presented by items B, C, and D of the bill of particulars be taken from the jury. The motions and instructions were properly denied. While Gurdzinski, on cross-examination, admitted he had not seen the car driven by defendant Souhrada previously, there can be no question but that the car he saw driven onto U. S. Highway 87, at the intersection of that highway and the Custer-Hardin road, and proceeding westerly, and which he pursued, was the car which crashed into the Dyckman car and was the car driven by defendant Souhrada.

In addition to the testimony of witness Bragg and Gurdzinski, relative to the speed of the cars involved in the collision, Herbert Dyckman, driver of the car which was crashed into by the car driven by defendant Souhrada, testified, without objection, that immediately before the crash he heard a roar such as he had heard made on other occasions by a speeding car.

Four witnesses, one of them a doctor who had examined the defendant Souhrada to determine whether or not he was drunk, testified that he was drunk. Defendant Souhrada admitted that he could have been drunk and admitting drinking a very limited number of highballs and bottles of beer that afternoon and evening and professed a complete loss of memory from about eight o'clock p. m., August 29th, until after the collision, or about one o'clock a. m., August 30th. Gerald Evans, defend-

ant's companion of the day and the owner of the car which was driven by defendant, also admitted the drinking acknowledged by defendant and likewise denied having a memory for events during the same period and until he regained consciousness in a hospital the next day. Thus, testimony concerning each of the allegations contained in the bill of particulars furnished to defendant was before the court and for the jury's consideration.

Defendant assigns as error the court's refusal to instruct, as ██ requested by defendant, that the defendant was not responsible for deaths resulting by an accident. There is nothing in the record to indicate that the deaths of the three parties named came about by any other means than as set forth in the information and as made definite and specific by the bill of particulars. The contention of defendant that he could not remember the events which transpired from about eight o'clock p. m., on August 29, 1947, when he left the Oasis roadhouse east of Hardin, until following the collision, did not establish an accident such as to warrant the court in giving requested instructions to that effect. A trial court need not give instructions which are inapplicable to the case as disclosed by the evidence. State v. Evans, 60 Mont. 367, 199 Pac. 440; First National Bank v. Carroll, 35 Mont. 302, 88 Pac. 1012; Davis v. Sullivan Gold Mining Co., 103 Mont. 452, 62 Pac. (2d) 1292; People v. Aguilar, 140 Cal. App. 87, 35 Pac. (2d) 137, 142.

The trial court denied several instruction requested by defendant, to the effect that, in this case all twelve of the jurors would have to find beyond a reasonable doubt upon a specific act, or the specific acts, or omission, or omissions, which constituted criminal negligence and which proximately caused the deaths of the persons named, in order to find the defendant guilty, or, in other words, that some of the jurors could not agree on one or more of the acts alleged, and others of the jurors, upon other acts, or act, omission, or omissions, and find the defendant guilty. In urging as error the trial court's failure to so instruct, the defendant relies upon several cases by the Supreme Court of Utah, namely: State v. Bleazard, 103 Utah 113, 133 Pac. (2d)

1000; State v. Rasmussen, 92 Utah 357, 68 Pac. (2d) 176; State v. Johnson, 76 Utah 84, 287 Pac. 909.

A reading of these cases and the later Utah cases of State v. ▮ Thompson, 110 Utah 113, 170 Pac. (2d) 153, and State v. Roedl, 107 Utah 538, 155 Pac. (2d) 741, discloses that the Supreme Court of Utah did not so decide. It is not necessary that a jury, in order to find a verdict, should concur in a single view of the transaction disclosed by the evidence. If the conclusion may be justified upon either of two interpretations of the evidence, the verdict cannot be impeached by showing that a part of the jury proceeded upon one interpretation, and part upon the other. Murray v. New York Life Ins. Co., 96 N. Y. 614, 48 Am. Rep. 658; People v. Sullivan, 173 N. Y. 122, 65 N. E. 989, 63 L. R. A. 353, 93 Am. St. Rep. 582; State v. Flathers, 57 S. D. 320, 232 N. W. 51, 72 A. L. R. 150, annotation at 154.

Defendant assigns as error the alleged misconduct of the ▮ county attorney in having Coyle Redding testify that Shirley Redding, one of the persons named in the information, was his daughter, that she was eighteen years of age at the time of her death and that at that time she was in good health; and in having the name of Mrs. Sam Redding endorsed on the information and testifying that Sam Redding, Jr., another of the persons named in the information, was her son, that at the time of his death he was twenty-eight years of age and at that time he was in good health. Each witness testified, without objection, as aforesaid, until the question concerning the health of the deceased child was asked and, at that point, the objection was made that the testimony was immaterial. The objection was overruled and answer made. On appeal it is claimed that the county attorney was guilty of misconduct and that the witnesses were produced and their testimony elicited to arouse the sympathy of the jury and to prejudice the defendant. The county attorney contends that the testimony was offered to prove identity. The error urged on appeal was not contained in the objection made to the particular question asked. It is well settled that an objection, to be good, must point out the specific

386

ground of the objection, and that, if it did not do so, no error is made in overruling it. In other words, a party is confined to the specific objections made by him and can have the benefit of no others. 53 Am. Jur., "Trial," sec. 137, p. 121; 64 C. J., "Trial," sec. 203, p. 180; Herman v. Jeffries, 4 Mont. 513, 1 Pac. 11; Tucker v. Jones, 8 Mont. 225, 19 Pac. 571.

Neither was the objection made timely, for each of the witnesses testified concerning relationship to the deceased child and the age of the child before the question as to the physical condition of the child was asked. Permitting the answer to this question was not error. Martin v. Corscadden, 34 Mont. 308, 86 Pac. 33; Frederick v. Hale, 42 Mont. 153, 112 Pac. 70.

The trial court gave a stock instruction numbered 33, to-wit: "You are instructed that, in every crime or public offense, there must exist a union or joint operation of act and intent, or criminal negligence."

The court also gave instruction No. 3, which reads: "You are further instructed that intent is not an element of involuntary manslaughter." Defendant objected to the giving of instruction No. 3 and urges that the giving of the instruction created reversible error. The giving of such instruction did not constitute error, for, in this prosecution for involuntary manslaughter, the issue is one of criminal negligence rather than of intent.

Objection was also made by defendant, and defendant urges as error, the giving of instruction 4, defining "feloniously," as follows: "The word 'feloniously,' when used in an information, charging a defendant with involuntary manslaughter, means without justification or excuse." This court previously has indicated that "feloniously" implies an act which is done with a mind bent on doing wrong. State v. Rechnitz, 20 Mont. 488, 52 Pac. 264. However, it was not necessary to use the word "feloniously" in the information, as the offense could have been described in the language of the statute. People v. Davenport, 13 Cal. App. 632, 110 Pac. 318; 14 Cal. Jur., sec. 43, p. 57; 42 C. J. S., Indictments and Informations, sec. 135, page 1028; State v. Rechnitz, supra.

It was not necessary that the word "feloniously" be defined by the court's instructions, and the court's definition could not have been prejudicial to the defendant, particularly where, as here, other instructions clearly advised the jury of the elements of the alleged crime and the quantum of proof required to justify conviction of the defendant. State v. Fuller, 34 Mont. 12, 85 Pac. 369, 8 L. R. A., N. S., 762, 9 Ann. Cas. 648; 3 Am. Jur., Appeal and Error, secs. 1122-1123, pp. 639-643.

We find that defendant was ably defended; that he had a fair trial; and we find no error which we think was prejudicial to the defendant.

The judgment is affirmed.

Mr. Chief Justice Adair and Associate Justices Angstman, Metcalf and Freebourn concur.