

**THE ATTORNEY GENERAL**

**OF TEXAS**

**AUSTIN 11, TEXAS**

GERALD C. MANN
XXXXXXXXXXXXXXXXXXXXXX
ATTORNEY GENERAL

Honorable George H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

> Opinion No. O-3516
> Re: Rules concerning and
> construction of, Art. II,
> H. B. 8, 47th Leg., 1941
> (Art. 7047b, V.A.C.S.),
> Commonly known as the Natural
> Gas Production Tax Law.

This is in answer to your request for our opinion on a construction of certain features of Article II of House Bill 8, Forty-seventh Legislature, 1941, (codified as Article 7047b of Vernon's Annotated Revised Civil Statutes of Texas) commonly known as the "natural gas production tax" law.

Ordinarily in writing an opinion we first state the questions asked, and then we discuss the statutes and the rules of law concerning the questions and conclude with our answers. But, in this opinion there are twelve questions and the answer to each depends upon a lengthy analyzation of a statute, and therefore we will first state the statute involved and analyze it to some extent and then state each question and follow it by an answer.

The pertinent parts of said Article II of House Bill 8, Forty-seventh Legislature, 1941, (Art. 7047b, V.A.C.S.) reads as follows:

"Sec. 1 (1) There is hereby levied an occupation tax on the business or occupation of producing gas within this State, computed as follows:

"A tax shall be paid by each producer on the amount of gas produced within this State, and on the amount of gas produced in another State and imported into this State upon the first sale thereof in intrastate commerce, equivalent to five and two tenths (5.2) per cent of the market value of all gas including casinghead gas produced and saved within this State, and of all gas sold if produced in another State and imported into this State, at the market value thereof, as and when produced, or as and when imported.

"The market value of gas produced in another State and imported into this State shall be the average value at the mouth of the well of like gas sold within this State as revealed by reports made to the Comptroller for the quarter immediately preceding the quarter in which such gas was imported and sold. Provided, however, that the amount of the tax on sweet and sour natural gas shall never be less than eleven one hundred fiftieths (11/150) of one (1) cent per one thousand (1,000) cubic feet on sweet and sour natural gas sold or produced and saved in this State, and not thereafter lawfully injected into the earth in the State of Texas, for the following purposes; (a) storage thereof; (b) recycling; (c) repressuring; (d) lifting oil and not thereafter; (e) lawfully vented or flared in connection with the production of oil.

"The market value of gas produced in this State shall be the value thereof plus any bonus, or premium, or anything of value paid therefor, or any sum of money that such gas will reasonably bring if produced and sold in accordance with the laws, rules and regulations of this State, provided that notwithstanding any other provision herein to the contrary, where gas is processed for its liquid hydrocarbon content and the residue gas is returned by recycling methods to the same gas-producing formation underlying the land from which the gas is produced, the taxable value of such gas shall be three fifths (3/5) of the gross value of all products extracted, separated and saved from such gas,

"In case gas is sold for cash the tax shall be computed on the producers' gross receipts of such sale; and in case the whole or a part of the consideration for the sale of gas is any portion of the products extracted from such gas, the tax shall be computed on the gross value of the products received plus all other things of value received by the producer, except in case of gas processed by recycling operations.

"In determining the market value of gas for the purpose of computing the tax due, there shall be excluded the value of residue gas lawfully injected into the earth in the State of Texas for the following purposes: (a) storage thereof; (b) represurring; (c) lifting oil; and also (d) gas lawfully vented or flared in connection with the production of oil; save and except however, if any gas so injected into the earth is sold for such purposes, then the market value of the gas so sold shall not be excluded in computing the tax. All liquid hydrocarbons that are recovered from gas by means of a separator or by other nonmechanical methods shall be taxed at the same rate as oil as levied by Article 1 of this Act.

"(2) The tax hereby levied shall be a liability of the producer of gas and it shall be the duty of each such producer to keep

accurate records in Texas of all gas produced, making monthly
reports under oath as hereinafter provided.

". . .

"(6) The tax herein levied shall be borne ratably by all
interested parties, including royalty interests; and producers
and/or purchasers of gas are hereby authorized and required to
withhold from any payment due interested parties the proportion-
ate tax due and remit the same to the Comptroller.

"Sec. 2 (1) For the purpose of this Act "producer" shall mean
any person owning, controlling, mananging, or leasing any gas
well and/or any person who produces in any manner any gas by
taking it from the earth or waters in this State, and shall
include any person owning any royalty or other interest in any
gas or its value whether produced by him, or by some other
person on his behalf, either by lease, contract, or otherwise.

". . .

"(12) For the purpose of this Article, by the term "cubic feet
of gas' is meant volume of gas expressed in cubic feet and
computed at a base pressure of four (4) ounces per square inch
above the average barometric pressure of fourteen and four tenths
(14.4) pounds per square inch, a standard base and flowing
temperature of sixty (60) degrees Fahrenheit; correction to be
made for pressure according to Boyle's Law, and for specific
gravity according to test made by the balance method.

"Sec. 2a. (1) The tax herein imposed on the producing of gas
shall be the primary liability of the producer as hereinbefore
defined, and every person purchasing gas from producer thereof
and taking delivery thereof at or near the premises where
produced shall collect said tax imposed by this Article from the
producer. Every purchase including the first purchaser and the
subsequent purchaser, required to collect any tax under this
Article, shall make such collection by deducting and withholding
the ammount of such tax from any payments made by such purchaser
to the producer, and remit same as herein provided.

"Sec. 3. The Comptroller shall employ auditors and/or other
technical assistants for the purpose of verifying reports and
investigating the affairs of producers and/or purchasers to
determine whether the tax is being properly reported and paid.
He shall have the power to enter upon the premises of any tax-
payer liable for a tax under this Article, and any other premises
necessary in determining the correct tax liability, and to
examine, or cause to be examined, any books, or records of any
person, subject to a tax under this Article, and to secure any

other information directly or indirectly concerned in the enforcement of this Article, and to promulgate and enforce, according to law, rules and regulations pertinent to the enforcement of this Article, which shall have the full force and effect of law. Before any division or allotment of the occupation tax collected under the provisions of this Article is made, one half (1/2) of the one (1) per cent of the gross amount of said tax shall be set aside in the Treasury for the use of the Comptroller in the administration and enforcement of the provisions of this Article; and so much of the said proceeds of one half (1/2) of one (1) per cent of the occupation tax paid monthly as may be needed in such administration and enforcement is hereby appropriated for such purposes, subject however to appropriation by the Legislature."

"' A statute' says Bish. Cr. Law, | 291, "is simply a fresh particle of legal matter dropped into the previously existing ocean of law'" State v. Rechnitz, 20 Mont. 488. To our way of thinking, this particular particle, to-wit, said Article 7047b, even though it be fresh, has certainly muddied the waters of the ocean of law with its ramifications and complications on market value. The plain term "market value" has been the subject of controversy and discussion by the courts for many years, but we are not confronted with a plain form of "market value" here because the definition of the term in this case is adorned with an intricate set of provisos and qualifications that excel all previous legislative ingenuity. In this opinion we will attempt to unravel and explain the Legislature's involved phraseology that goes to make up the definition of 'market value' and that levies a tax calculated on the same.

We are only going to deal in this opinion with gas produced in the State of Texas.

This statute levies an occupation tax on the business of producing gas. (See the recent case of Canadian River Gas Co. v. Bivins, No. 7657, decided June 11, 1941, by the Supreme Court of Texas, construing the former natural gas production tax law; and see also the case of Trustees of Cook's Estate v. Sheppard, 89 S. W. (2d) 1026, construing the gross production oil tax law.)

The amount of the tax is a sum equivalent to 5.2 per cent of the "market value" of the gas "as and when produced."

"Market value" is defined in the statute by a definition, with various kinds of provisos, qualifications, exceptions, and exceptions to the exceptions; and in order to give us a clearer set of rules by which to decide your questions we have analyzed the "market value" provisions of the statute and are stating

them in rules, in somewhat different order from that in which they are stated in the statute, as follows:

1.  GENERAL DEFINITION OF MARKET VALUE.  "The market value of gas . . .shall be the value thereof plus any bonus, or premium, or anything of value paid therefor, or any sum of money that such gas will reasonably bring if produced and sold in accordance with the laws, rules and regulations of this State. . ."

2.  PROVISO FOR MINIMUM VALUE IN ALL CASES, EXCEPT WHEN GAS IS RETURNED TO THE EARTH FOR CERTAIN REASONS. "The amount of the tax on sweet and sour natural gas shall never be less than 11/150ths of 1 cent per thousand cubic feet on sweet and sour natural gas . . . produced and saved in this State, and not thereafter lawfully injected into the earth in the State of Texas for the following purposes; (a) storage thereof; (b) recycling; (c) represurring; (d) lifting oil and not thereafter; (c) lawfully vented or flared in connection with the production of oil."

3.  PROVISO WHEN GAS IS SOLD FOR CASH.  "In case gas is sold for cash the tax shall be computed on the producer's gross receipts of such sale . . ."

4.  PROVISO WHEN CONSIDERATION IS PART OF EXTRACTED PRODUCTS, IF THE GAS IS NOT PROCESSED BY A RECYCLING OPERATION. "In case the whole or a part of the consideration for the sale of gas is any portion of the products extracted from such gas, the tax shall be computed on the gross value of the products received plus all other things of value received by the producer, EXCEPT in case of gas processed by recycling operations."

5.  PROVISO WHEN GAS IS PROCESSED FOR LIQUID HYDROCARBONS AND RESIDUE RETURNED BY RECYCLING METHODS.  "Where gas is processed for its liquid hydrocarbon content and the residue gas is returned by recycling methods to the same gas-producing formation underlying the land from which the gas is produced, the taxable value of such gas shall be 3/5th of the gross value of all products extracted, separated, and saved from such gas."

6.  EXCEPTION, PROVIDING THAT IN DETERMINING MARKET VALUE THERE SHALL BE EXCLUDED THE VALUE OF RESIDUE GAS RETURNED TO EARTH FOR CERTAIN REASONS."In determining the market value of gas . . ., there shall be excluded the value of residue gas lawfully injected into the earth in the State of Texas for the following purposes: (a) storage thereof; (b) represurring; (c) lifting oil; and also (d) gas lawfully vented or flared in connection with the production of oil; save and except however, if any gas

so injected into the earth is sold for such purposes, then the market value of the gas so sold shall not be excluded in computing the tax. "

7. QUALIFICATION TO THE AFFECT THAT LIQUID HYDROCARBONS RECOVERED BY CERTAIN METHODS SHALL BE TAXED AS OIL. "All liquid hydrocarbons that are recovered from gas by means of a separator or by other nonmechanical methods shall be taxed at the same rate as oil as levied by Article I of this Act."

We will now proceed to state and answer each of your twelve questions.

Your first question is as follows:

"A producer, 'A', also owns the pipeline to which a well is connected, and his payment for royalty is on a long term contract for 1/8 at a set price per MGF. Does this contract constitute a sale of the 1/8? Is the taxable market value of the 8/8 to be computed as eight times such pay for 1/8?"

It appears to us that the taxable value of this gas is controlled by rule 1 (General Definition of Market Value) and rule 3 (Proviso When Gas is Sold for Cash), stated above.

Rule 3 (Proviso When Gas is Sold for Cash) states clearly that it applies when gas is sold for cash. However, we believe it would only apply to bona fide cash sales, that is, it would not apply if the sale was made at a price lower than usual in order to defraud the State or for any other unfair purpose. For example, if a sale was between two affiliated corporations controlled by the same interests through stock ownership, or between parties of any kind acting in collusion, and the sale was not an "arm's length transaction", rule 3 would not apply. If the producer's gross receipts derived from a bona fide cash sale are either more or less than the market value as defined in rule 1 (General Definition of Market Value), nevertheless the value prescribed in said rule 3, to-wit, the gross receipts from the cash sale, would be the value upon which the tax should be based.

We also believe that rule 3 (Proviso When Gas is Sold for Cash) would only apply to cash sales of gas made as and when said gas is produced, that is, at the time and at or near the place of production.

Is any of the gas sold for cash in this case, that is, is there any gas to which rule 3 (Proviso When Gas is Sold for Cash) applies? We think that the 1/8th royalty gas is sold for cash as and when said gas is produced, and that the taxable value

thereof should be determined under rule 3. (We assume that the lessee is paying a cash royalty as the gas is produced.) Our conclusion is based on the theory that under the terms of the contract, which we assume is an ordinary gas lease of the type containing the provisions you describe, the lessor has title to 1/8th of the gas in the ground, and the lessee has title to 7/8ths of the gas in the ground. Sheffield v. Hogg, 124 Tex. 290, 77 S.W. (2d) 1021. When said gas is produced title passes in said 1/8th royalty from the lessor to the lessee, and the lessee pays for the same at an agreed price per M.C.F., regardless of the market price of other gas in the same vicinity. In other words the lessee has contracted to purchase the lessor's 1/8th royalty gas at a set price, instead of merely selling said 1/8th royalty gas along with his 7/8ths of the gas to a third person at a fluctuating market price and accounting to the lessor for the price received from the third person.

Rule 3 (Proviso When Gas is Sold for Cash) can only be used to compute the tax on that part of the gas that is actually sold for cash. If only 1/8th of a given quantity of gas is sold for cash, and rule 3 is applicable, as in the case under consideration, said rule 3 can only be used to compute the tax on said 1/8th of the gas, and the tax on the remaining 7/8ths should be computed by some other rule.

In the case you ask about there is no sale of the leasee's original 7/8ths of the gas for cash at the time and place of production, but we understand that said gas is put in the producer's pipe line and sent away, and therefore said rule 3 (Proviso When Gas is Sold for Cash) should not be applied to said 7/8ths. We believe that the only one of the above stated rules that is applicable to the lessee's original 7/8ths of the gas is rule 1 (General Definition of Market Value).

Said rule 1 (General Definition of Market Value) consists of two measures as to what "market value" shall be. The first measure says that "market value . . .shall be the value thereof plus any bonus, or premium, or anything of value"; and the second measure says that "market value . . . shall be . . . any sum of money that such gas will reasonably bring if produced and sold in accordance with the laws, rules and regulations of this State . . ." Of course, both measures cannot be applied at the same time. We believe that the Legislature intended that when rule 1 is applicable the first measure of said rule 1 should apply if the gas was sold, either at or away from the wall, and paid for at its value, as that term is commonly understood, or sold and paid for at its value plus a bonus, premium, or anything of value; and that the second measure of said rule 1 should apply if it was not sold, for example, used,

or if it was sold at a price less than the amount prescribed in the first measure. If the gas is sold away from the well, and rule 1 is applied, the cost of transportation to the place of sale must be taken into consideration in determining value at the well, because the tax is based on the value of the gas as and when produced.

Of course, an application of said rule 1 (General Definition of Market Value) calls for a determination by the Comptroller of Public Accounts of "market value", that is, the Comptroller of Public Accounts must examine all available evidence, including sales of other gas in the same gas field, that show or tend to show "market value" and from that evidence make a finding of fact as to whether or not the gas has been sold for its "value" or what the gas would reasonably bring if it had been produced and sold in accordance with the laws, rules and regulations of this State.

Our answer to your first question is that under the (lease) contract there is a sale of the 1/8th royalty gas at the time and place of production from the lessor to the lessee; and the taxable value of said 1/8th royalty gas, which was sold for cash, should be computed under rule 3 (Proviso When Gas is Sold for Cash) on the basis that the gross receipts derived from such sale constitute the taxable value. The taxable value of the 7/8th of the gas originally belonging to the lessee (producer) should be computed under rule 1 (General Definition of Market Value) as stated above.

Your second question is as follows:

"Facts the same as in the first question, but the contract price advances 1/2 cent per MCG every five years. Does taxable value increase the same?"

The same reasons that we have given above in answering your first question apply in giving an answer to this question. We assume in this question, the same as we assumed in answering the first question, that the lessee is paying a cash royalty as the gas is produced. In the first question the cash payments per M.C.F. for the royalty gas were the same throughout the term of the contract, but in this case the cash payments for the royalty gas advance 1/2 cent per M.C.F. every five years under the terms of the (lease) contract.

We believe that the 1/8th royalty gas in this case, the same as in the first question, is sold for cash as and when produced, and that the taxable value thereof should be determined under rule 3 (Proviso When Gas is Sold for Cash). As in the first

case, the cash sale is from the lessor to the lessee
(producer)    at the price agreed on in the (lease) contract,
which price in this case advances 1/2 cent each five years.
It may be that market value, as that term is commonly understood
or as that term is defined in rule 1 above, is higher or lower
than the (lease) contract price, but nevertheless, the contract
price being a cash sale, said rule 3 (Proviso: When Gas is Sold
for Cash) controls.  Therefore, when the 1/2 cent increase per
M. C. F. on royalty payments goes into effect, it being a cash
sale under our interpretation, the gross receipts of said sale
likewise increase by that amount and the tax also increases to
that extent.

Our answer to your second question is "yes".

Your third question is as follows:

"Facts the same as in the first question but "A" actually buys
a small amount of gas from outsiders at 3½¢ at a time  when
his royalty contract is 4½¢, and the average values in the same
field are about 4¢."

The taxable value of this gas is controlled by rule 1 (General
Definition of Market Value) and rule 3 (Proviso When Gas is Sold
for Cash), the same as under your first question.  The fact that
the producer is buying a small amount of extra gas at a price
one cent lower than his royalty contract requires him to pay, and
one half cent lower than the average value of gas in the field,
does not within itself mean that he is entitled to pay taxes on
a lower taxable value.  The price for which a person sells gas
is not always its "market value" as that term is commonly under-
stood or as it is defined in rule 1 (General Definition of
Market Value); and likewise for the same reasons, the price for
which a person buys gas is not always its "market value".  Of
course, every sale that is made is admissible for consideration as
evidence on the question of market value in that vicinity, but
the market value under rule 1 is not controlled by one, or even
two or three, isolated sales.  In the case you ask about, the
producer might be buying the gas below the market value defined
in rule 1 and paying the royalty owners more than the market
value defined in said rule.

Our answer to your third question is the same as our answer to
your first question.  The taxable value of the 7/8ths of the
gas belonging to the producer should be computed under rule 1
(General Definition of Market Value).  The taxable value of the
1/8th royalty gas, which was sold for cash, should be computed
under rule 3 (Proviso When Gas is Sold for Cash).  The foregoing
answer is in regard to the gas produced by producer "A", and

we are not concerned in this question with the tax on the gas purchased by "A".

Your fourth question is as follows:

"Facts the same as in the first question, but the producer pays 1/8 royalty at 4¢ and actually sells the gas produced at 3½¢. Is 7/8ths taxable at 3½¢ and 1/8 at 4¢?"

We assume that the sale for 3½ cents was 3½ cents per M.C.F. for cash as or when produced. The discussion under the three previous questions applies to the answer to this question. However, under the facts in the previous questions only 1/8th of the gas was sold for cash and the remaining 7/8ths was put into the producer's pipeline; but, under this question all of the gas is sold for cash as and when produced, 1/8th by the royalty owner at 4 cents per M.C.F. (the sale being from the lessor to the leassee), and 7/8ths by the producer at 3½ cents per M.C.F. We think that the taxable value of all of the gas in this case is controlled by rule 3 (Proviso When Gas is Sold for Cash). Therefore, the taxable value of said gas is an amount equal to the gross receipts received for said cash sales of the same, 4 cents per M.C.F. for the 1/8th royalty and 3½ cents per M.C.F. for the producer's 7/8ths.

Our answer to your fourth question is "yes".

Your fifth question is as follows:

"A pipeline operator gave (1) one-half interest in forty acres surrounding each of ten wells; (2) and one-half interest in each well to a party who blocked up the acreage, who in turn contracted with the pipeline to settle on all gas produced for the life of the wells at one-half of 2¢ per MCF; and (3) the pipeline operator also advanced the money to drill the wells and (4) agreed not to connect any wells other than the ones in this deal, thereby insuring the taking of larger amounts of gas than is being taken per well by surrounding pipelines, who all pay royalty at 4¢ per MCF, while land owners in the vicinity are paid royalty of 1/8 of 4¢, or 1/2¢ per MCF. In the case mentioned, the royalty figures 1/2 of 2¢ or 1¢ flat rate per MCF. This results in actual payment of twice as much per MCF as royalty, but one-half as much per MCF claimed taxable value. How should the value be computed in this case, assuming that the contracts mentioned herein were all entered into about ten years ago; also, that since that date no other wells have been connected? Does any of the foregoing constitute a bonus or premium as of and after May 1, 1941?"

It is clear that the facts stated in connection with this question do not bring it within rule 4, rule 5, rule 6 or rule 7, stated above. Rule 2 (Provise for Minimum Value), providing that the tax must not be less than 11/150ths of 1 cent per M.C.F. in certain cases, applies here. Does rule 1 (General Definition of Market Value) or rule 3 (Proviso When Gas is Sold for Cash) also apply?

We will first consider whether or not rule 3 applies. Is this a cash sale? No. We will not go into the intricate details of this transaction, because it will suffice to say that it is apparent that the owner of the act in the ground is disposing of his gas for considerations that are not entirely cash. His interest in the gas was given to him in the first place, and no doubt in consideration of that gift he is selling his gas for a lesser price to the pipeline operator who gave him his royalty and/or leasehold interest than he would have sold and said gas for to a stranger. This brings us to the conclusion that rule 1 (General Definition of Market Value) controls the value to be placed on the gas involved in this question.

Our answer to your fifth question is that the taxable value of all of the gas involved in this question should be computed under rule 1 (General Definition of Market Value). We do not believe that any of the factors you mention constitute a bonus or premium of sufficient certainty that you can consider them such for the purpose of calculating value under rule 1; and probably you should use the second measure in rule 1 in determining "market value". This of course will involve a finding of fact by you, that is, a finding as to what "sum of money . . . such gas will reasonably bring if produced and sold in accordance with the laws, rules and regulations of this State."

Your sixth question is as follows:

"A producer's contract with a purchaser is on 16.4 lbs. pressure base. Should he report this base to the Comptroller or correct same to 14.65 lbs?"

Paragraph (12) of Section 2 provides as follows:

"For the purpose of this Article, by the term 'cubic feet of gas' is meant volume of gas expressed in cubic feet and computed at a base pressure of four (4) ounces per square inch above the average barometric pressure of fourteen and four tenths (14.4) pounds per square inch, a standard base and flowing temperature of sixty (60) degrees Fahrenheit; correction to be made for pressure according to Boyle"s Law, and for specific gravity according to test made by the balance method."

We believe that said paragraph (12) of Section 2, contemplates that a cubic foot of gas shall be considered as having "a pressure of four ounces per square inch above the average barometric pressure of 14.4 pounds per square inch," which is the same as a pressure of 14.65 pounds per square inch. Four ounces equals .25 pounds, and therefore .25 pounds above 14.40 pounds equals 14.65 pounds.

Our answer to your sixth question is that the producer should report the cubic feet of gas produced on the basis of a pressure of 14.65 pounds per square inch.

Your seventh question is as follows:

"A producer also owns the pipeline connected to a well. His royalty contract is on 16.4 lbs., but at some distant point he sells gas at a pressure base of 14.65, resulting in the sale of about 1200 cu. ft. for every 1000 cu. ft. paid as per royalty contract. Should he report on 16.4 lbs. or on 14.65 lbs., and is said gain taxable?"

The reasoning and the answer in connection with this question is the same as in the sixth question. As this tax is based on the value of gas, we do not see how the amount of tax would be changed by changing the method of measurement. If a given quantity of gas consists of nine hundred billion molecules it seems to us that the value of that gas would be the same whether it was in a larger tank under a pressure of 14.65 pounds per square inch or in a smaller tank under a (greater and more condensed) pressure of 16.4 pounds per square inch. If a bale of cotton weighs 500 pounds when it comes from the gin its contents and value still remain the same if it is later compressed at a commercial compress into a smaller bale.

The tax under this statute is levied "at the market value thereof (of the gas), as and when produced."Therefore, the producer should make his report to the Comptroller, showing the amount produced, that is, the cubic feet produced, calculated at a pressure of 14.65 pounds; and he should pay the tax on its value at the moment it was produced. If the amount of gas produced is reported at the time of production as 1000 cubic feet on a basis of a pressure of 16.4 pounds per square inch, and its taxable value (as determined under rule 1 above or whichever rule is applicable) per cubic foot at the time of production is "y"; and later if that same gas is allowed to expand into a larger container of approximately 1200 cubic feet so that its pressure is less and its taxable value per cubic foot is also less, to-wit "z", we see no reason why the taxable value of the whole quantity each time is not the same.

This formula in such a case is true; 1000 x "y" = 1200 x "z". In other words, 1000 x "y" equals the value of that particular gas when produced, and 1200 x "z" equals the value of that particular gas later, and they both equal each other.

Our answer to your seventh question is the same as to the sixth question, that is, the producer should report the cubic feet of gas produced on a basis of a pressure of 14.65 pounds per square inch. In answer to your question; ". . . is said gain taxable?" We reply that there is no gain in value, and value is what the tax is based on.

Your eighth question is as follows:

"In this last case, if the final sale was in another state, would the answer be different?"

This is a tax on the business of producing gas. It is a tax on production. The tax accrues when the gas is produced, and the tax is measured by its "market value," as defined in the statute, "as and when produced." This is not a sales tax or a proceeds tax, although the definition of market value in the statute makes the market value of the gas as and when produced depend in some instances on the manner of disposal of the gas. The tax accrues as and when the gas is produced, and if the gas is produced in Texas it does not make any difference whether said gas is finally sold in Texas or finally sold in another state. Of course, the Comptroller can look at and consider the ultimate sale and transportation costs in another state, if necessary, in determining the market value of the gas as and when produced in Texas.

Our answer to your eighth question is "no."

Your ninth question is as follows:

"A producer delivers all of the gas from a well to a recycling plant under a contract whereby the producer is paid 50 per cent of the value of the products recovered. The operator of the recycling plant does not return all of the residue to the same formation, but part of it is sold to a pipeline. Is said sale taxable? If so, is it taxable at 60 per cent or 100 per cent of the value?"

This is not a sales tax. It is an occupation tax on the business of producing gas, calculated on the "market value" of the gas "as and when produced" under a statutory definition of "market value." Therefore, the sale of the gas you ask about is not taxable, but the production of said gas is taxable in an

amount calculated under one or more of the seven statutory rules outlined above.

Which of the above stated rules apply in this case? We think that rule 5 (Proviso When Gas is Processed for Liquid Hydrocarbons and Residue Returned by Recycling Methods) applies to that proportion of the gas (as it comes out of the ground) the residue of which is returned by recycling methods to the same producing formation underlying the land from which the gas is produced; but we do not think that said rule 5 applies to the remaining proportion of the gas, that is, the proportion of the gas (as it comes out of the ground) the residue of which is sold and delivered to a pipeline and not returned to the formation. We assume that all of this gas is first processed for its liquid hydrocarbon content. Said rule 5, after describing the gas to which it applies, to-wit, said gas processed for liquid hydrocarbons and returned to the formation, says: "the taxable value of such gas shall be 3/5ths of the gross value of all products extracted, separated, and saved from such gas." We believe that the word "such" in said rule 5 clearly limits the gas, on which the value shall be calculated under the 3/5ths of the value of the products method, to that proportion of the gas (as it comes out of the ground) the residue of which is "returned by recycling methods to the same gas-producing formation."

Of course, in applying rule 5 (Proviso When Gas is Processed for Liquid Hydrocarbons and Residue Returned by Recycling Methods) to that gas, the residue of which is returned by recycling methods to the same producing formation underlying the land from which the gas is produced, the Comptroller again must become a fact finder and ascertain the gross value of all products (such as methane, ethane, propane, butane, pentane, hexane and heptane, which make up gasoline, kerosene, liquified gas, etc.) extracted, separated, and saved from such gas,* because the words of the statute provide that market value in such a case is 3/5ths of the gross value of said products. (At this point we cannot refrain from saying parenthetically

---

*NOTE: We are advised that the following chemical products can be obtained from natural gas:
1. Through oxidation: water gas, hydrogen, methly alcohol, acetone, formaldehyde, and bakelite.
2. Through pyrolysis (cracking): acetylene, acetaldehyde, butadiene, rubber, benzene, resorcinol, toluene, saccharin, sylene, carbon black, ink, hydrogen, ammonia, ethylene, ethyl alcohol, ethylene chloride, ethylene glycol, propylene, propyl alcohol, butylene, butyl alcohol, anthracene, alizarin, napthalene, indigo.
3. Through chlorination: methyl chloride, methylene chloride, chloroform, carbon tetrachloride.

that it was an enormous task under the former "natural gas production tax" law, passed by a former Legislature, for the Comptroller to ascertain the "market value" of every foot of gas produced from over 48,000 gas producing wells in Texas, but the Legislature is no longer content with him merely ascertaining "market value" of each cubic foot of the gas produced, but he must now ascertain it under an involved rule, and in many instances he must extend his energies and ability and ascertain the gross value of the methane, ethane, propane, butane, pentane, hexane and heptane, making up the produced gas. We are reminded of this statement of Rehoboam in the Bible: "And now whereas my father hath chastised you with whips, but I will chastise you with scorpions." I Kings, 12:11)

What about the remaining proportion of the gas, that is, that proportion of the gas (as it comes out of the ground) the residue of which is sold and delivered to a pipeline and not returned to the formation? We believe the taxable value of that proportion of the gas should be ascertained under rule 4 (Proviso When Consideration is Part of Extracted Products, if the Gas is not Processed by a Recycling Operation), because this proportion of the gas (as it comes out of the ground), the residue of which is sold to a pipeline, clearly comes within said rule because the consideration for its sale is the value of a portion of the products extracted from such gas. Although the producer receives 50 per cent of the value of the product extracted instead of the product itself, we think that it was intended that rule 4 should include cases of this kind.

Our answer to your ninth question is "no", that is, said sale is not taxable. No sale is taxable under this statute. The production of that proportion of the gas the residue of which is sold to the pipeline is taxable under rule 4; and the production of that proportion of the gas the residue of which is returned by recycling methods to the formation is taxable under rule 5.

Your tenth question is as follows:

"The facts are the same as in the ninth question, except that part of the residue is used to drill another well. If taxable, how valued?"

We assume that said gas is used as fuel in the drilling operations of the other well. It is our belief that the same reasons and the same answer applies in this case as in the case involved in the ninth question. We see no difference in the gas the residue of which is sold to a pipeline, as in the above question, and the gas the residue of which is used in drilling another well, as in this question. This gas was clearly "produced and saved,"

" and a tax on the production thereof, based on the "market value" (as defined by statute) "as and when produced," is due. That means a "market value" before the hydrocarbons are extracted.

Our answer to your tenth question is that the production of that proportion of the gas the residue of which is used to drill another well is taxable under rule 4.

Your eleventh question is as follows:

"A producer delivers all of the gas from a well to a recycling plant under a contract whereby he is paid 50 per cent of the value of the liquid hydrocarbons extracted. Is residue gas used as fuel in the operation of the recycling plant taxable if the producer is paid nothing by the operator? If so, to whom?"

We are advised by you that the residue gas which is not used as fuel in the recycling plant is returned to the same gas-producing formation underlying the land from which the gas is produced.

For the reasons stated in answering the ninth and tenth questions above, rule 5 (Proviso When Gas is Processed for Liquid Hydrocarbons and Residue Returned by Recycling Methods) applies to that proportion of the gas (as it comes out of the ground) the residue of which is returned by recycling methods to the same producing formation underlying the land from which the gas is produced.

Which rule applies to that proportion of the gas (as it comes out of the ground) the residue of which isused as fuel in the operation of the recycling plant? You ask if the residue gas so used is taxable. Of course the residue alone is not taxable, because the tax is on the production of the gas "as and when produced," that is, at the time of production. The tax is not on a residue that is obtained by processing after production, but the tax is on the production of the gas in its natural state as it comes from the ground, calculated on its "market value" under the market value rule stated in the statute which rule in some instances takes into consideration the value of the products. Under the same reasons we have given in answering the ninth and tenth questions above, we see no reason why rule 4 (Proviso When Consideration is Part of Extracted Products, if Gas is not Processed by a Recycling Operation) does not apply to that proportion of the gas you ask about, to-wit, that proportion of the gas the residue of which is used as fuel in the operation of the recycling plant. Said gas is clearly "produced and saved"; and part of the consideration for the sale of the same is a portion; or the value of the portion, of the products extracted.

Our answer to your eleventh question is that residue gas used

as fuel in a recycling plant is not taxable; but, under the facts you give, the production of that proportion of the gas that comes out of the ground the residue of which is so used as fuel is taxable, and its market value as and when produced is calculated under rule 4.

Your twelfth question is as follows:

"A producer sells and delivers all of the casinghead gas from a well to the operator of a gasoline plant under a contract whereby the producer is paid 20 per cent of the value of the gasoline extracted, plus 5 per cent of the net proceeds from the sale of residue gas. Is residue gas used as fuel in the operation of the gasoline plant taxable if the producer is paid nothing by the operator? If so, to whom?"

You have advised us that none of the gas in this case is returned to the ground, that is, no recycling takes place.

We believe that the answer to this question is controlled entirely by rule 4. (Proviso When Consideration is Part of Extracted Products, if the Gas is not Processed by a Recycling Operation). Again we wish to point out that this is not a sales tax or a transfer tax, but this is a tax on production; and therefore the statute does not tax gas after it has been processd or tax residue gas, but it taxes the production of gas at its market value 'as and when produced,' that is, when it comes out of the ground; and market value "as and when produced" is determined by the rules prescribed in the statute, which rules in some instances take into consideration the value of the products. The statute gives us rules for ascertaining "market value," providing that different rules shall be applied under different circumstances. Rule 4 applies when "the whole or a part of the consideration for the sale of gas is any portion of the products extracted from such gas, . . . except in case of . . . recycling operations." We think said rule 4 clearly applies in this case. Although the producer receives 20 per cent of the value of one of the products extracted, plus other proceeds, in this case, instead of the product itself, we think it was intended that the rule should include cases of this kind. Rule 4 says that in this kind of a case "the tax shall be computed on the gross value of the products received plus all other things of value received by the producer." What tax? The tax on the production of all of the gas produced, that is, the total cubic feet that came out of the well.

Our answer to your twelfth question is that residue gas used as fuel in a gasoline plant is not taxable; but, under the facts you give, the production of all of the casinghead gas sold and delivered to the operator of a gasoline plant, under a contract

whereby the producer is paid 20 per cent of the value of the gasoline extracted, plus 50 per cent of the proceeds from the sale of the residue gas, is taxable, and the value of all of said gas as and when produced should be computed under rule 4.

In conclusion we desire to say that we regret that we have been unable in this opinion to answer each of your questions categorically. We have done our best, and that consists of giving you some general rules concerning this law. We feel that we are compelled to advise you that under this statute it will be necessary for you to decide in the case of each of the 48,000 gas producing wells in Texas which of the provisos, qualifications and exceptions of this statute apply to the particular well, and then you must ascertain the facts necessary to determine market value in accordance with the particular rule to be applied. It is difficult to administer accurately and with equality any tax law, even though it is a clear and concise tax law; and therefore, we realize that in the administration of this particular statute with all of its intricate complications it will be almost humanly impossible to avoid imposing injustices, hardships and heavy burdens on some taxpayers, and at the same time permit others to escape their just tax liabilities, even though you put forth a super effort to enforce this law. It is always the hope of the tax gathering official, the average taxpayer, and the citizen in general that the tax laws be clear, concise and easy to understand; but such persons must be content with whatever tax statutes the legislative branch of the government sees fit to impose upon them. Therefore it is the duty of the proper taxing officials of this State to proceed with the Herculean task of administering and enforcing this law. We hope this opinion will be of help to you, and we assure you that we will assist you in construing this statute in the future in every way possible.

Yours very truly

ATTORNEY GENERAL OF TEXAS
s/ Cecil C. Rotsch

By

Cecil C. Rotsch
Assistant

CCR:LM:CGE

APPROVED OCT. 16, 1941
s/ Grover Sellers
FIRST ASSITANT
ATTORNEY GENERAL

This opinion considered and approved in limited conference